USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 0 3 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

OCHRE LLC, a New York Limited Liability
Corporation,

       Plaintiff,

  -v-

ROCKWELL ARCHITECTURE PLANNING
AND DESIGN, P.C., a New York Professional
Corporation; PROJECT DYNAMICS, INC., a
Delaware Corporation; BRAD H.
FRIEDMUTTER-CA, INC., a California
Corporation d/b/a FRIEDMUTTER GROUP;
NEVADA PROPERTY 1 LLC, A Nevada Limited
Liability Corporation and wholly owned
subsidiary of DEUTSCHE BANK TRUST
COMPANY AMERICAS,

       Defendants.

------------------------------------------------------------X

12 Civ. 2837 (KBF)

CORRECTED
MEMORANDUM &
ORDER

KATHERINE B. FORREST, District Judge:

  In this action alleging copyright infringement and various implied contract claims related to plaintiff Ochre LLC's designs for luxury chandelier elements at the Cosmopolitan Hotel in Las Vegas, plaintiff has failed to demonstrate it has a valid copyright, the sole basis upon which original federal jurisdiction is premised.

  Plaintiff filed the instant action on April 10, 2012 (Dkt. No. 1.) Ochre alleges that Rockwell Architecture, Planning and Design, P.C. ("Rockwell"), the design firm that was in charge of procuring the chandeliers, committed copyright infringement when it solicited and ordered chandelier elements from a competitor,

1

based on Ochre's designs for its "Arctic Pear" glass drop elements. Ochre had great hopes that its glass drop elements would be selected by the Cosmopolitan for the chandeliers in its luxury suites. Ochre's designers created shop drawings and other design specifications to provide a prototype lighting fixture for a model hotel room that it hoped would lead to a larger contract. In the end, Ochre's hopes went unfulfilled and it never received a purchase order for the chandeliers, despite what it characterizes as an "express understanding" of such an order. It has sued for, inter alia, copyright infringement as to all defendants, despite the finding by the U.S. Copyright Office that Ochre's designs did not contain copyrightable subject matter.

In its Second Amended Complaint ("SAC"), filed June 28, 2012 (Dkt. No. 12), Ochre joined as defendants (1) Rockwell, (2) Brad H. Friedmutter–CA, Inc. – the project's Executive Architect, (3) the owner of the Cosmopolitan, Nevada Property 1 LLC, a subsidiary of Deutsche Bank Trust Company Americas ("Deutsche Bank"), and (4) the Cosmopolitan's procurement agent, Project Dynamics, Inc. The SAC alleges six causes of action: copyright infringement, fraudulent inducement, quantum meruit, promissory estoppel, unjust enrichment, and misappropriation and unfair competition. Only the copyright infringement cause of action arises under federal law; the remaining five causes of action raise state law claims. As both plaintiff and defendant Rockwell are alleged to reside in New York, there is no basis for diversity jurisdiction.

In four separate motions, defendants have moved for the dismissal of the SAC under Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 14, 18, 21, 34.) As plaintiff fails to allege plausible facts to support its copyright infringement claim—the sole basis for this Court's original jurisdiction—defendants' motions to dismiss are GRANTED.

## FACTUAL ALLEGATIONS

Plaintiff Ochre is a specialized furniture, lighting, and accessory design company. (SAC ¶ 2.) Among its products are a line of "Arctic Pear" specialty chandeliers with rows of glass "drop" elements shaped like the eponymous fruit. (Id. ¶ 15.) Ochre filed a single copyright application for both the "Arctic Pear Round 45" and "Arctic Pear Round 60" designs with the U.S. Copyright Office on March 22, 2012. (SAC Ex. C.) The Copyright Office denied the application on May 14, 2012, on the basis that the two designs were for a "useful article" and lacked "any separable authorship" from the functional aspects of the article. (SAC Ex. D.)

In May 2009, defendant Rockwell, a specialty design firm, solicited plaintiff to submit prototype lighting fixtures for the Cosmo Room, a model room at the Cosmopolitan hotel and condominium complex then under construction in Las Vegas. (Id. ¶ 28-29.) Ochre provided defendant Project Dynamics, the procurement agent for the Cosmopolitan, with shop drawings and design information for lighting fixtures for the Cosmo Room, based on the "Round 45" and "Round 60" designs. (Id. ¶ 30, 36, 46.) Plaintiff alleges that Project Dynamics shared the shop drawings and design information with Rockwell and defendant Friedmutter, the chief architectural firm on the project. (Id. ¶ 46.) After Project Dynamics approved the

3

drawings, plaintiff sent prototype fixtures to the hotel for display in the model room. (Id. ¶¶ 46-48.)

Plaintiff alleges it only submitted the detailed designs and samples to "defendants" – undifferentiated by the text of the SAC – on the "express understanding" that it was going to be awarded a contract to provide hundreds of similar fixtures for the Cosmopolitan. But shortly after sending the prototypes, Project Dynamics informed Ochre that it would have to go through a competitive bidding process. (Id. ¶ 49.) As part of that process, Ochre submitted what it characterizes as "confidential" financial and other information relating to the designs, information it told Project Dynamics it was furnishing "in good faith that the [purchase order] deposit will be received in a timely manner." (Id. ¶¶ 50-52.) Ochre alleges that "defendants" assured it that the bidding process run by Deutsche Bank's "eAuction" system was merely a "formality." (Id. ¶ 53.)

Ochre alleges that Friedmutter, the architect, issued two specifications for the light fixtures in September 2009, both of which included photographs of Ochre's Arctic Pear design for "inspiration" and the "look of" only, and referred to a drawing that allegedly incorporated the designs Ochre had provided to Rockwell and Project Dynamics. (Id. ¶¶ 73-75, 76-80.) Ochre alleges that the Friedmutter specifications falsely claimed that "[t]he custom item described herein is the proprietary design or Nevada Properties 1 dba the Cosmopolitan Resort and Casino. " (Id. ¶¶ 76, 79.)

Despite the "assurances" of "defendants" Ochre did not receive a purchase order. Ochre alleges that cost-cutting in light of the Las Vegas housing bust and

4

the related sale of the Cosmopolitan to Deutsche Bank in the summer of 2008 prompted defendants to outfit the hotel "on the cheap." (Id. ¶¶ 64-70.) "Defendants" had used "Ochre's design, specifications and shop drawings to procure unlicensed copies or 'knockoffs' of the Arctic Pear Chandeliers from a cheap overseas supplier." (Id. ¶ 84.) On information and belief, Ochre states that the knockoffs were installed in "hundreds or perhaps thousands" of hotel rooms not only at the Cosmopolitan, but also at other hotels where defendants had design responsibility. (Id. ¶ 87.)

Ochre filed suit on April 10, 2012. (Dkt. No. 1.) It amended its complaint on June 15, 2012. (Dkt. No. 8.) At the initial pretrial conference on June 27, 2012, the Court permitted plaintiff to file one "final" amendment. (Dkt. No. 10.) In response, plaintiff filed the SAC on June 28, 2012, which added a cause of action for misappropriation and unfair competition and included information regarding the denial of plaintiff's copyright application. (Dkt. No. 12.) Defendants Friedmutter (Dkt. No. 14), Deutsche Bank (Dkt. No. 18), Rockwell (Dkt. No. 21), and Project Dynamics (Dkt. No. 34), filed motions to dismiss the SAC for failure to state a claim. These motions were fully briefed as of October 12, 2012.

## STANDARD OF REVIEW

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009). This means that this Court must accept plaintiff's factual allegations in its complaint as true and draw all reasonable inferences in plaintiff's favor. See Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir.2010). Taking those factual allegations as

5

true, to withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, while "Rule 8 marks a notable and generous departure from hyper-technical, code-pleading regime of a prior era, [ ] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown-that the pleader is entitled to relief." Id. (internal punctuation omitted); see also Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### A. Copyright Infringement

#### 1. Non-Copyrightability

The SAC fails to state a cognizable copyright infringement cause of action because, quite simply, the designs at issue are not copyrightable.

To state a cognizable claim for copyright infringement, a plaintiff must allege plausible facts that it owned a valid copyright and that the defendants copied the copyrighted work without authorization. See Heptagon Creations, Ltd. V. Core Group Mktg. LLC, No. 11 Civ. 01794(LTS)(AJP), 2011 WL 6600267, at *3 (Dec. 22, 2011)(citing Kregos v. Associated Press, 3 F.3d 656, 661 (2d Cir.1993)); Computer Assocs. Int'l v. Altai, 982 F.2d 693, 701 (2d Cir.1992). "Where the Copyright Office

6

denies registration, and the unsuccessful applicant subsequently brings an infringement action, courts nonetheless make an independent determination as to copyrightability." Aqua Creations USA Inc. v. Hilton Hotels Corp., 10 Civ. 246 (PGG), 2011 WL 1239793, at *3-*4 (S.D.N.Y. Mar. 28, 2011) aff'd sub nom. Aqua Creations USA Inc. v. Hilton Worldwide, Inc., 11-1798-CV, 2012 WL 2687957 (2d Cir. July 9, 2012).

Here, plaintiff alleges that the designs for which it sought copyrights were lighting fixtures for hotel rooms. There is no doubt that they constitute "useful articles." See, e.g., id. at *4-*7. For a copyright to issue with respect to a "useful article" – one that possesses an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information – the party seeking the copyright must prove that there exist attributes of the design that are physically or conceptually separable from its functional aspects. Id., at *3-*4.

Physical separability exists where "a component of a useful article can actually be removed from the original item and separately sold, without adversely impacting the article's functionality . . . ." See Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir.2005).

Conceptual separability does not exist in a design where "design elements reflect a merger of aesthetic and functional considerations." Brandir Int'l, Inc. v. Cascade Pac. Lumber Co., 834 F.2d 1142, 1145 (2d Cir.1987). Only "where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, [does] conceptual separability exist[ ]." Aqua

7

Creations, 2011 WL 1239793, at *4 (quoting Brandir, 834 F.2d at 1145). Even though particular utilitarian objects may be highly pleasing to the eye, "Congress has explicitly refused copyright protection for works of applied art or industrial design which have aesthetic or artistic features that cannot be identified separately from the useful article." Carol Barnhart Inc. v. Econ. Cover Corp., 773 F.2d 411, 418 (2d Cir. 1985).

Ochre fails to meet its burden as to copyrightability because it has not plausibly alleged physical or conceptual aspects of the Arctic Pear chandeliers separable from their functional aspects. Nowhere does the SAC allege that any element of the Arctic Pear design is physically separable from the fixture such that it could be sold without impacting the article's functionality.

Nor does the SAC allege conceptual separability. It is clear that in order to create a light fixture such as the Arctic Pear, its designer must think about its functional use – i.e., how it will refract, reflect, and absorb light. See Aqua Creations, 2012 WL 1239793, at *6 (noting, where lamp shade designer sued hotel for infringement in similar circumstance that "[i]t strains belief that the creator of [lampshade] designs would have selected a shape for the lamp shades without giving any consideration to the need for illumination.") That the Arctic Pear designs provided to the Cosmopolitan were designed to illuminate hotel rooms — no matter how stylish – suggests that the functional aspect of those designs is conceptually inseparable from their functional aspects.

Ochre cites Carol Barnhart for the proposition that where the ornamental aspects of an object were "not in any respect required by their utilitarian functions," those aspects could be copyrighted. (Pl.'s Mem. of L. in Opp. to Defs.' Mot. to Dismiss the 2d Amend. Compl. at 13-14 (citing Carol Barnhart, 773 F.2d at 419)). Yet Ochre fails to allege plausible facts that the elements of the Arctic Pear designs are not required for the fixture's utilitarian function. The belt buckle ornaments on which the analyses in Carol Barnhart and its predecessor case, Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989 (2d Cir. 1980), were based contributed nothing to the functionality of the buckles themselves. The Arctic Pear glass drops at issue here are different; because those drops aid in the transmission and dissemination of electric light, their ornamental aspects are inextricably intertwined with the utilitarian function of those lamps. While it would be possible to operate the lamp without the drops, that does not mean the ornamental aspects are "not in any way required." Rather, without the presence of the glass drops, the utilitarian function of the electric lamp would be diminished. It is not conceptually possible to separate one function from the other.

The Court – in its independent judgment – agrees with the Copyright Office's determination that the Arctic Pear designs are not copyrightable. In the absence of a valid copyright, plaintiff's copyright infringement cause of action cannot proceed. See Aqua Creations, 2012 WL 2687957, at *1.

### 2. Pleading Insufficiency

Even if plaintiff's designs were indeed copyrightable, this Court would still dismiss the copyright cause of action because it is insufficiently pled in two additional ways: first, even assuming a valid design, it fails to allege facts constituting copyright infringement. Second, it improperly "lumps" together the allegations against the various defendants.

#### a. Failure to Allege Facts Constituting Copyright Infringement

As to Friedmutter, Rockwell, Deutsche Bank and Project Dynamics, plaintiff fails to allege facts to show that each infringed Ochre's alleged copyrights.

To prove copyright infringement, in addition to ownership of a valid copyright in the allegedly infringed work, plaintiff must prove that defendants "copied" the work without permission. See Heritage Lace, Inc. v. Fresh Finds, LLC, 10 CIV. 7880 (KBF), 2012 WL 345904, at *3 (S.D.N.Y. Feb. 1, 2012)(citing Island Software and Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir.2005); Rogers v. Koons, 960 F.2d 301, 306 (2d Cir.1992)).

The term "copy" is defined broadly by the Copyright Act and subsequent case law to include violation of any of the exclusive rights in the bundle conferred on the copyright holder. See 17 U.S.C. § 501; Island Software, 413 F.3d at 260. Such rights include the right to make reproductions, to make derivative works, to distribute copies by sale or transfer of ownership, and to display the work publicly. See 17 U.S.C. § 106.

10

Plaintiff's complaint is insufficient in that it lacks specific allegations of copyright infringement against each of the defendants (whether as direct infringement or on a theory of secondary liability). For example, as regards Friedmutter, the SAC makes three specific allegations: first, that "Cosmopolitan's design team was led by defendant Friedmutter as executive architect;" second, that "Interior design . . . was handled by Friedmutter which worked with various specialty design firms, including Rockwell" (SAC ¶¶ 26-27); and third, that Friedmutter issued the specifications for the bidding process. (Id. ¶¶ 71-79.) The SAC contains no specific allegations that Friedmutter was involved in the selection of the fixture supplier or caused any "knockoffs" to be produced.

Rockwell is alleged to have 1) discussed the Cosmo Room with plaintiff, 2) forwarded the proposed design Ochre submitted for the model room, and 3) received the proprietary information that Ochre sent to Project Dynamics. (SAC ¶¶ 28, 29-30, 45.) None of those allegations go to whether Rockwell copied or wrongfully displayed Ochre's designs.

The allegations with respect to Project Dynamics are similarly insufficient. The only allegations specific to Project Dynamics in the SAC state that Project Dynamics acted as the procurement agent for the Cosmopolitan – a role in which it was essentially the owner's agent. Project Dynamics issued the request for quotation for the Ochre design samples, received Ochre's designs, and emailed bid forms to Ochre. (SAC ¶¶ 31, 32, 47, 49.) The SAC contains no allegations specific to

Project Dynamics regarding its approval or requisition of copies of the "Arctic Pear" designs.

With respect to Deutsche Bank, only one of plaintiff's specific allegations is relevant to the copyright infringement cause of action. That allegation is that Deutsche Bank, as owner of the property, has caused and continues to cause infringing products to be displayed at the hotel and on its website. (SAC ¶ 99.) Such an allegation, if supported by a sufficiently pled allegation of a valid copyright, might support a copyright infringement cause of action on an unauthorized public display theory. See 17 U.S.C. § 106 (West 2012)(noting exclusive right of copyright holder to display a "sculptural" work publicly).

### b. Lumping of Allegations

The remaining key facts pled in the SAC are "lumped" together and thus do not afford each defendant adequate notice of the factual allegations it faces. This failure to isolate the key allegations against each defendant supports dismissal under the standards set forth in Twombly and Iqbal.

Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants. See Atuahene v. City of Hartford, 10 Fed. App'x 33, 34 (2d Cir. 2001) (noting Fed. R. Civ. P. 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests'")(citing Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961); Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995)). A plaintiff cannot merely "lump[ ] all the defendants

12

together in each claim and provid[e] no factual basis to distinguish their conduct." Id.

Ochre lists a number of undifferentiated allegations in the SAC. For instance, the SAC alleges "defendants" gave an "express understanding" that Ochre would win the full purchase order (SAC ¶ 46); that "defendants" used "Ochre's design[s] . . . to procure unlicensed copies or 'knockoffs'", (SAC ¶ 84); and that "defendants . . . have actually held out the chandeliers utilized at the Cosmopolitan as authentic Ochre creations in communications to the public, in response to inquiries and otherwise." (SAC ¶ 89.) These statements do not allege which of the defendants or agents of those defendants engaged in the infringing activities, even where, as with the "express understanding", Ochre would have had a course of dealing with particular individuals and could allege which of those individuals made improper representations to Ochre.

Such "lumping" of allegations is exactly what the Second Circuit warned against in Atuahene and Simmons; plaintiff cannot force the various defendants to guess at the nature of its claims.

Plaintiff thus fails to allege plausible facts supporting its claim of a copyrightable design or conduct by each individual defendant constituting wrongful copying. As the Court previously gave plaintiff one final leave to amend its complaint, the copyright infringement cause of action against all defendants is DISMISSED WITH PREJUDICE.

13

B.      <u>Remaining State Law Causes of Action</u>

This Court has supplemental jurisdiction over the remaining causes of action for fraudulent inducement, quantum meruit, promissory estoppel, unjust enrichment, and misappropriation and unfair competition. 28 U.S.C. § 1367(a).

Having dismissed all claims over which it has original jurisdiction, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law causes of action. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>see</u> <u>also</u> <u>Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.</u>, 464 F.3d 255, 262–63 (2d Cir.2006). Those claims are dismissed without prejudice.

## CONCLUSION

Ochre's copyright infringement cause of action is DISMISSED WITH PREJUDICE as to all defendants. The Court declines to exercise supplemental jurisdiction over the fraudulent inducement, quantum meruit, promissory estoppel, unjust enrichment, and misappropriation and unfair competition causes of action, which are DISMISSED WITHOUT PREJUDICE as to all defendants.

The Clerk of Court is directed to close the motions at Docket Nos. 14, 18, 21, and 34, and to close this case.

SO ORDERED.

Dated:   New York, New York
         December 3, 2012

_____
KATHERINE B. FORREST
United States District Judge

15